UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| The Pan-Albanian Federation of America Vatra (The Hearth) Inc., | ) ) ) |
| PLAINTIFF, | ) ) ) Civil Action No. |
| v. | ) ) ) ) |
| Augustin Mirakaj, | ) ) ) |
| DEFENDANT. | ) ) |

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

NOW COMES the Plaintiff, The Pan-Albanian Federation of America Vatra (The Hearth) Inc. ("Plaintiff" or "VATRA"), establishing claims, as set forth below, against Defendant Augustin Mirakaj ("Defendant" or "Mirakaj").

**PARTIES**

1. The Pan-Albanian Federation of America Vatra (The Hearth) Inc. is a non-profit corporation duly incorporated pursuant to the laws of the Commonwealth of Massachusetts and which maintains its principal place of business located at 778 Huntington, Avenue, #6, Boston, Massachusetts, County of Suffolk.

2. Defendant Augustin Mirakaj is an individual who resides at 290 Mountain Road, Pleasantville, New York.

**JURISDICTION AND VENUE**

Subject matter jurisdiction is proper under 28 U.S.C. § 1331 over Plaintiff's trademark infringement and false designation claims under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and copyright

infringement claims under 17 U.S.C. § 501, because such claims arise under the laws of the United States.

3. Subject matter jurisdiction of this Court is also properly based upon the existence of complete diversity between the parties and an amount in controversy which exceeds $75,000 exclusive of costs and interest pursuant to 28 U.S.C. § 1332.

4. Personal jurisdiction over Defendant is lawful and proper here as Defendant engaged in tortious conduct which caused injury in Massachusetts. The false and defamatory statements by Defendant were directed at an entity and individuals in Massachusetts and caused damages to Plaintiff in Massachusetts.

5. Venue for this action properly lies in this district pursuant to 28 USC § 1391, because a substantial part of the events giving rise to the claims in this action occurred in this District.

## SUMMARY OF CASE

6. Plaintiff VATRA's claims arise from the false and defamatory statements published to the public by Defendant Augustine, in which some of the false and defamatory statements included Defendant's unauthorized use of the VATRA trademark, causing Plaintiff to suffer damages as a result.

## FACTUAL ALLEGATIONS

7. VATRA is an internationally recognized and highly esteemed non-profit organization founded in Boston, Massachusetts in or about 1912 with a mission to promote and preserve the Albanian culture and history, and support Albanians and American Albanians globally. VATRA has several local chapters throughout the United States.

8. VATRA has, among many other notable endeavors, successfully maintained the *Dielli* newspaper, the oldest Albanian newspaper in print form since 1909. VATRA has advocated

on behalf of Albanian's globally, made donations to Albanians in need, awarded scholarships for various financial support, and achieved critically acclaimed recognition amongst its members, the greater Albanian community, and U.S. and Albanian political and business leaders globally.

9. VATRA has also published notable works and journals advocating for a better and independent Albania, committed enormous efforts over decades to support of Albanian people and culture globally.

10. For example, around the time of WWI, an Albanian government vacuum having been created, VATRA was the quasi-government of Albania in exile. VATRA sent its members to Europe to preserve, advocate for and advance Albanian causes and independence. During the 1919 Paris Peace Convention, VATRA was very active lobbying American delegates to advance Albanian national causes. Albanians around the world supported VATRA's 1919 Paris Peace Convention efforts donating more than $150,000. Over its storied history, VATRA has raised hundreds of thousands of dollars for a variety of causes including both political, cultural, and humanitarian causes. As recently as 2019, VATRA supported Albanians suffering the devastation of that year's earthquake. These symbolic and courageous efforts of VATRA to represent and advocate for Albanians and Albanian Americans persists to this day.

**Plaintiff VATRA's Trademark**

11. Plaintiff VATRA owns the exclusive trademark rights to the distinctive VATRA trademark ("VATRA mark") that appear as follows:

 , "*Dielli*" and "*Gazetta Dielli*".

12. VATRA has served the Albanian community worldwide dating back at least as far back as its registered formation in 1912 in Boston, Massachusetts. VATRA has been in operation for more than 100 years consistently using the VATRA mark throughout its tenured operation, including on a national and international scale. VATRA's membership hail from around the United States and span across the oceans into Albania and its surrounding region. Similarly, VATRA distributes its 100 plus year-old digital and print newspaper to readers globally.  Its former members include esteemed diplomats, dignitaries, bishops and business and political leaders.

13. VATRA's existence and reputation depends upon the comradery and comity of this constituency of Albanians across the nation and internationally.  VATRA conducts both national and localized conferences and meetings for the advancement of VATRA and its interests. The VATRA mark is emblazoned at each of the VATRA conventions, and throughout all the organization's efforts.

14. The integrity and trust between the hierarchy and its members of the organization compounds the legitimacy of VATRA's endeavor. This relationship of trust further facilitates closure in the minds of its members and constituents that the historical customs and practices toward advocating for Albanians is the unfettered interest pioneering VATRA's efforts and

fulfilment of its mission. Current and prospective members associate the VATRA name and VATRA mark with this amalgamation of historical efforts.

15. As a result of this recognition and goodwill, VATRA maintains a domestic and international reach, which has influenced generations of Albanians to advocate, represent, and further serve the best interests of Albanians across America and the globe. VATRA's incalculable efforts and national customer and membership base is a direct result of, and a reflection of, its national and global reputation, efforts and outreach.

16. For more than 100 years, the VATRA organization and the VATRA mark has been attached to all these efforts garnering VATRA and its VATRA mark incalculable commercial value.

17. Plaintiff owns the exclusive trademark rights to the distinctive VATRA mark, having used the VATRA mark since the association's creation in 1909.

18. Since 1909, Plaintiff's use of the VATRA mark has been extensive, continuous, and exclusive.

19. The VATRA mark has been used by Plaintiff on its documentation provided to members of the association and published to the general public, emails, social media accounts, other media outlets, and websites.

20. Plaintiff uses the VATRA mark on a wide variety of printed materials including its newspaper, "*Gazetta Dielli*", or just "*Dielli*" since at least 1909, and on a scholarly publication, *The Adriatic Review,* dating back to 1918.

21. PAFAV is the producer, editor, publisher, and distributor of the *Dielli* newspaper since 1909. VATRA, through the production and distribution of *Dielli*, and its organization's advocacy efforts has continuously used its name and the VATRA mark since 1909 throughout the United States and globally.

22. The "*Gazetta Dielli*", or simply "*Dielli*" is a daily on-line newspaper and monthly print publication. It is distributed to most of VATRA's 600 plus members for an additional $60 subscription fee. *Dielli* is also distributed to numerous prominent institutions like the Library of Congress and Harvard College for archiving and scholarly examination of VATRA and Albanian history.

23. The *Dielli* provides broad and deep coverage of Albanian related interests and news which range from political affairs to personal anecdotes. The *Dielli* also sells advertisement space for purchase.

24. An additional example of VATRA's continuous use of its name and the VATRA mark includes VATRA's yearly educational grant supporting four to five Albanian students each year. Since the 1960s, VATRA's educational support efforts have cumulatively awarded more than $160,000.

25. Each of these endeavors have been pursued under VATRA's name and in conjunction with the VATRA mark.

26. Plaintiff's VATRA mark is distinctive to both the consuming public, in Plaintiff's trade, and has become distinctly recognizable among its current member and prospective members because of its storied existence, century plus endeavors, and continuous use of the VATRA mark during their undertakings.

27. Plaintiff has expended substantial effort and expense to protect the VATRA mark's distinctiveness in the marketplace. Plaintiff extensively polices unauthorized use of the VATRA mark and has served cease and desist letters, and made telephone calls, to combat misuse or unauthorized use of the VATRA mark.

28. Plaintiff offers and sells its goods and services under its VATRA mark to any interested consumer, although, primarily to Albanians and American Albanians whom these goods and services are offered to and sold to under the VATRA mark identifying VATRA as the source.

29. The goods and services offered under the VATRA name and VATRA mark are of high quality, and this is evidenced by its tenured *Dielli*, and the critically acclaimed recognition amongst its members, the greater Albanian community and U.S. and Albanian political and business leaders globally. It is this notoriety that legitimatizes and deems VATRA as the sole and exclusive representative of this nationally mobilized initiative to represent, advocate and fundraise for Albanians who have reciprocated this trust and recognition to VATRA.

30. As a result, VATRA and the VATRA mark have acquired incalculable distinction, reputation and goodwill belonging exclusively to Plaintiff.

31. Plaintiff's VATRA mark and the goods and services offered thereunder have received significant unsolicited coverage in various media, including, and not limited to, an April 6, 2020 article in the Albanian paper, *Tirana Times*.

32. As a result of its distinctiveness and widespread use and promotion throughout the United States, VATRA and its VATRA mark are a famous mark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(a) – (d), and became famous and distinct prior to the acts of the Defendant alleged herein.

33. As a result of more than a century of efforts, VATRA and the VATRA mark have become uniquely recognizable, famous, and distinctive at state, national, and international levels garnering itself an incalculable, special, unique and distinctive quality and recognition unique and exclusive to VATRA.

34. Plaintiff's tenured use of its name and the VATRA marks have garnered VATRA strong common law rights and statutory protection under the Lanham Act for its name and its VATRA mark.

35. In addition to statutory protections by virtue of the mark's registration with United States Trademark and Patent Office, Plaintiff's use, including the use described herein, has garnered it ownership of extensive common law trademark rights in and protection of the mark.

36. Plaintiff also has statutory protection by virtue of the mark having been filed with the

37. Defendant has unlawfully used the VATRA mark on publications and documentation that includes, but is not limited to, social media websites, without permission from VATRA.

38. Defendant's unlawful use of the VATRA mark has also been used by Defendant on publications designed to defame Plaintiff and damage Plaintiff's reputation in the public.

39. Lastly, in addition to the above, Defendant also publishes defamatory and offensive statements under the Facebook page of "Gazetta Dielli" which appears as if it is the storied papers of the Plaintiff.

**Defamatory Statements Made By Defendant Mirakaj**

40. Over the past year, Defendant has made defamatory statements on social media websites about VATRA to third parties, which includes, but it not limited to, false allegations of criminal conduct. Some of the multitude of defamatory statements on social media contain derogatory and offensive pictures that contain the aforementioned VATRA mark. Copies of those statements and photos are attached hereto collectively as **Exhibit A**.

41. Defendant's false allegation include that VATRA Elmi Berisha, Besim Malota, and many other members of VATRA are criminals, communists, and spies of Serbia. Some of these defamatory statements are incorporated in photos of VATRA members Defendant has posted to the Facebook page "Gazeta Dielli". (See **Exhibit A**)

42. Upon information and belief, Defendant is the owner of the Facebook account "Gazeta Dielli".[1]

43. On or about July 6, 2023, VATRA served a cease and desist letter to Defendant demanding that he cease and desist from making defamatory statements and posting derogatory photos on social media about VATRA and its members and officers, and violating trademark, service mark, and copyright laws under which VATRA is protected. VATRA further demanded that Defendant immediately confirm in writing, no later than five business days from the date of the letter, his intent to comply promptly with the demands set forth in the letter. Defendant was warned that his failure to comply would result in VATRA taking necessary measures to protect its valuable rights, including securing injunctive relief from a court and recovering all appropriate damages, including treble damages, attorney's fees, and costs. A copy of the cease and desist letter is attached hereto as **Exhibit A.**

44. Defendant responded to VATRA's cease and desist letter thereafter by denying all allegations against him and alleging that VATRA's letter contained "mistruths and complete falsehoods." Defendant therefore failed to comply with any of VATRA's demands regarding removal of the defamatory statements and photos on social media, and violations of trademark, service mark, and copyright laws. A copy of the response letter is attached hereto as **Exhibit B.**

45. As of the present time, the Facebook account "Gazeta Dielli" continues to publish defamatory statements about VATRA and its members and officers and display derogatory photos of VATRA and its members and officers.

46. As a result of Defendant's false and defamatory statements, outside organizations have withdrawn their sponsorship and contributions to VATRA.

---

[1] https://www.facebook.com/gazeta.dielli

47. As a result of Defendant's false and defamatory statements, some VATRA members have discontinued their payment of dues.

48. VATRA has sustained financial damages as a result of Defendant's false and defamatory statements.

49. Additionally, like the trademark violations described above, the Defendant has also unlawful used and disseminated the trademark "Gazetta Dielli". At a minimum, the Defendant has published and disseminated information via Facebook under the name "Gazetta Dielli".

50. Lastly, the Defendant unlawfully holds himself out as a member of VATRA, which he is not. Defendant also represents himself to be the president of the Manhattan branch of VATRA, which he is not.

51. By virtue of holding himself out as the president of the Manhattan branch, and by of improperly portraying the VATRA Manhattan branch as an authorized branch when it is not, Defendant has created confusion by associating the Manhattan branch and its unlawful use of the marks with VATRA.

52. Moreover, an a critical aspect of the claim by VATRA against the Defendant, is that the Defendant is attempting to undermine VATRA by claiming and portraying they have authority to act as a member, officer, representative under the name of VATRA, and separately, as the leader or president of the Manhattan branch.

53. The Defendant has interfered with the orderly operation of VATRA and has employed subterfuge to undermine and topple VATRA, and interference with VATRA's relationship with its constituents, members, and public.

54. Upon information and belief, Defendant has solicited, collected, and otherwise received money by virtue of the various unlawful acts described above.

55. Upon information and belief Defendant has been organizing with various individuals under the name of VATRA, or its Manhattan branch. Defendant and his followers have no authority to do so and must be restrained from doing so.

56. Upon information and belief the Defendant has gathered approximately 70 persons, calling them VATRA members, and intends on holding their own convention, meetings, and organizing under the name of VATRA, with the next anticipated date of December 9, 2023.

### COUNT I
### TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114

57. Plaintiff repeats and re-alleges each and every allegation contained above and incorporates them into this count as if specifically alleged herein.

58. Defendant's use of the VATRA marks and variations thereof, is likely to cause confusion, mistake, or to deceive, and is likely to deceive the relevant public that Defendant is authorized, sponsored or approved by, or is affiliated with Plaintiff.

59. The above-described acts constitute direct trademark infringement of the VATRA mark and false designation of origin in violation of 15 U.S.C. § 1114(1).

60. Defendant had actual notice of the infringement described herein, namely that Defendant's use of the VATRA mark in defamatory statements about Plaintiff, was infringing Plaintiffs' rights.

61. Despite knowing about the infringing conduct, Defendant continued use of the VATRA mark and has materially encouraged, enabled, and contributed to the infringing conduct.

62. Defendant has direct control over the infringement of Plaintiff's rights and Defendant is the party who has been publishing the statements containing the VATRA mark within them.

63. Defendant is therefore liable for the use of VATRA's mark in violation of 15 U.S.C. § 1051, et seq. and common law.

64. By reason of the above-described acts of Defendant, Plaintiff has suffered damage to the goodwill associated with the VATRA mark.

65. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the VATRA mark.

66. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

67. By reason of Defendant's acts, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to entry of a temporary restraining order against Defendant and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

68. Because the above-described acts of Defendant were willful, Plaintiff is entitled to damages, and that those damages be trebled, under 15 U.S.C. § 1117.

69. This is an exceptional case making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## COUNT II
### TRADEMARK INFRINGEMENT AND FALSE DESIGNATION
### 15 U.S.C. § 1125(a)

70. Plaintiff repeats and re-alleges each and every allegation contained above and incorporates them into this count as if specifically alleged herein.

71. Defendant's use in commerce of the VATRA mark is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendant is authorized, sponsored or approved by, or are affiliated with Plaintiff.

72. The above-described acts of Defendant constitute direct trademark infringement of the VATRA mark and false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Plaintiff to relief.

73. Defendant had actual notice of the infringement and false designation described herein, namely that Defendant's use of the VATRA mark in connection with Defendant's defamatory statements against Plaintiff was infringing Plaintiff's rights.

74. Despite knowing about the infringing conduct, Defendant has materially encouraged, enabled, and contributed to the infringing conduct.

75. Defendant has direct control and monitoring over the instrumentality used to infringe Plaintiffs' rights. Among other things, Defendant has been and continues to use the VATRA mark when making defamatory statements about Plaintiff to the public.

76. Defendant therefore is liable for the use of the VATRA mark in violation of 15 U.S.C. § 1051, et seq. and common law.

77. By reason of the above-described acts of Defendant, Plaintiff has suffered damage to the goodwill associated with the VATRA mark.

78. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the VATRA mark.

79. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

80. By reason of Defendant's acts, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendant, Plaintiff is entitled to entry of a temporary restraining order against Defendant and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

81. Because the above-described acts of Defendant were willful, Plaintiff is entitled to damages, and that those damages be trebled, under 15 U.S.C. § 1117.

82. This is an exceptional case making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## COUNT III
## COPYRIGHT INFRINGEMENT
## 17 U.S.C. § 501

83. Plaintiff repeats and re-alleges each and every allegation contained above and incorporates them into this count as if specifically alleged herein.

84. At all times relevant hereto, Plaintiff has been the producer and owner of the VATRA mark reproduced, distributed and publicly displayed by Defendant through social media websites, including the Facebook account "Gazeta Dielli".

85. Without authorization, Defendant reproduced and distributed the VATRA mark, which is owned by Plaintiff.

86. Plaintiff did not authorize Defendant's copying, display or distribution of its work.

87. Defendant infringed the copyrights in Plaintiff's creative work by reproducing, distributing and/or publicly displaying the work by and through images on the Facebook account "Gazeta Dielli" without proper approval or authorization of Plaintiff.

88. Defendant knew the infringed work belonged to Plaintiff and that Defendant did not have permission to exploit Plaintiff's work.

89. Defendant knew his acts constituted copyright infringement.

90. Defendant's conduct was willful within the meaning of the Copyright Act.

91. As a result of his wrongful conduct, Defendant is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to its business reputation and goodwill.

92. Plaintiff is entitled to recover actual damages, which include losses and any and all profits Defendant has made as a result of its wrongful conduct. 17 U.S.C. § 504(b). Alternatively, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504(c).

93. In addition, because Defendant's infringement was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

94. Plaintiff is entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

## COUNT IV
## MASS. GEN. LAWS CHAPTER 93A, SECTION 11

95. Plaintiff repeats and re-alleges each and every allegation contained above and incorporates them into this count as if specifically alleged herein.

96. Massachusetts General Laws, Chapter 93A ("The Massachusetts Consumer Protection Statute") prohibits the use of "unfair or deceptive acts or practices" in trade or commerce.

97. Defendant's actions and omissions described above constitute unfair and deceptive acts and practices in violation of Mass. Gen. Laws Chapter 93A, Section 11.

98. Defendant holds himself as the leader and president of the Manhattan branch of VATRA, and thereby seeks financial support and gains along therewith, is acting in trade and commerce.

99. Defendant's unfair and deceptive acts and practices were willful, knowing, and intentional violations of Mass. Gen. Laws Chapter 93A, Section 11.

100. Defendant uses the marks of the Plaintiff, along with defamatory statements for the commercial purpose of gaining followers, building a stream of income and to support his endeavors as the leader of the Manhattan branch.

101. As a result of Defendant's violations of Mass. Gen. Laws Chapter 93A, Section 11, Plaintiff has been damaged in an amount to be determined by this Court.

## COUNT V
## DEFAMATION

102. Plaintiff repeats and re-alleges each and every allegation contained above and incorporates them into this count as if specifically alleged herein.

103. Over the past year, Defendant has made defamatory statements on social media websites about VATRA to third parties, which includes, but it not limited to, false allegations of criminal conduct. Some of these defamatory statements on social media contain derogatory and offensive pictures that contain the aforementioned VATRA Marks. (See **Exhibit A**).

104. Defendant's false allegation include that VATRA Elmi Berisha, Besim Malota, and many other members of VATRA are criminals, communists, and spies of Serbia. Some of these defamatory statements are incorporated in photos of VATRA members posted to the Facebook account page "Gazeta Dielli". (See **Exhibit A**).

105. Upon information and belief, Defendant is the owner of the Facebook account "Gazeta Dielli".

106. As of the present time, the Facebook account "Gazeta Dielli" continues to publish defamatory statements about VATRA and its members and officers and display derogatory photos of VATRA and its members and officers.

107. Some of the above statements made by Defendant are defamatory *per se* in that the statements falsely accuse Plaintiff and its members of committing crimes, including fraudulent conduct.

108. Defendant compounded his wrongdoing by continuing to publish such defamatory statements, and by failing and/or refusing to retract such statements even after he was notified that such statements were false and defamatory.

109. In doing do, Defendant's false and defamatory statements subjected Plaintiff and its members to ridicule and scorn, damaging the association's reputation. The consequences of the false allegations have been harmful to Plaintiff and its members.

110. As a result, Defendant is liable for damages to Plaintiff.

## COUNT VI

### INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP

111. Plaintiff repeats and re-alleges each and every allegation contained above and incorporates them into this count as if specifically alleged herein.

112. Plaintiff has had relationships with the various person recruited by the Defendant and the Manhattan branch. The Defendant, taking it upon himself to act unlawfully, disenfranchised the Manhattan branch, the persons it has garnered as followers, so as to interfere with VATRA's relationship with these persons, and to form a legitimate Manhattan branch.

113. Said differently, the unlawful Manhattan branch led by the Defendant is constant barrier of interference between VATRA and (i) the people who the Defendant has recruit, and (ii) the formation, organization and operation of a lawful Manhattan branch under VATRA.

### PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff, The Pan-Albanian Federation of America Vatra (The Hearth) Inc., respectfully pray that this Honorable Court:

A. Enter judgment against Defendant, Augustin Mirakaj, on all counts so alleged;

B. Award money damages in an amount to be proven at trial;

C. That the Court issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Defendant and his agents, servants,

employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant from:

    i. Engaging in, or contribution to, any infringing activity in connection with the VATRA mark, *Dielli* mark, and any similar mark;

    ii. Using any mark that is identical or confusingly similar to the VATRA mark, and *Dielli* mark.

    iii. Engaging in any deceptive acts; and

    iv. Making false and defamatory statements about VATRA and/or its members;

    v. Purporting to be the Manhattan branch of VATRA, and organizing under the name or similar name, that in any way purports to have a relationship or the support of VATRA.

D. That the Court enter an order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Plaintiff's VATRA mark, which are in Defendant's possession or under its control.

E. That Plaintiff be awarded damages for trademark infringement and unfair competition and that these damages be trebled due to Defendant's willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

F. That Plaintiff be awarded actual damages and Defendant's profits pursuant to 17 U.S.C. § 504(b), or in the alternative, enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2), for Defendant's willful infringement of Plaintiff's copyrights.

G. Award treble damages in an amount to be determined a trial and attorney fees for Defendant's violations of Mass. Gen. Laws Chapter 93A, Section 11.

H. Award costs, attorney fees, interest, pre-judgment and post-judgment interest at the statutory rate, and litigation expenses recoverable pursuant to contract, at law, by statute and in equity in an amount to be determined at trial; and

I. Award such other relief as this Court deems just and appropriate.

## JURY DEMAND

The Plaintiff, The Pan-Albanian Federation of America Vatra (The Hearth) Inc., hereby demands a trial by jury on all issues so triable.

Date: November 25, 2023

Respectfully submitted,
The Pan-Albanian Federation of America VATRA (The Hearth) Inc.,
By its attorney,

/s/ Darius Pakrooh
Darius Pakrooh, Esq. (BBO 691599)
PAKROOH LAW, P.C.
90 Canal Street, Suite 400
Boston, MA 02114
(617) 874-1410
darius@pakroohlaw.com